NOTA CONSTRUCTION CORPORATION *vs.* KEYES ASSOCIATES,
INC.

No. 96-P-1997.

Middlesex. February 10, 1998. - May 29, 1998.

Present: BROWN, GILLERMAN, & PORADA, JJ.

*Deceit. Damages,* Negligent misrepresentation. *Negligence,* Architect.
*Consumer Protection Act,* Availability of remedy.

In a civil action alleging deceit, negligent misrepresentation, and violation of
G. L. c. 93A, a Superior Court judge erred in granting summary judgment
in favor of the defendant, where the allegations of the complaint were suf-
ficient to meet the requirement of Mass.R.Civ.P. 9(b) that the circumstances
constituting fraud be stated with particularity [16]; where the alleged
misrepresentations presented issues of disputed facts as to whether they
gave rise to a cause of action [16-19]; where material facts remained in
dispute on the claim of negligent misrepresentation [19-21]; and where,
consequently, the G. L. c. 93A claim based on the alleged misrepresenta-
tions remained viable [21-22].

CIVIL ACTION commenced in the Superior Court Department on
August 18, 1993.

The case was heard by *Hiller B. Zobel*, J., on a motion for
summary judgment.

*Leo S. McNamara* for the plaintiff.

*David S. Branch* for the defendant.

PORADA, J. The plaintiff (Nota), a subcontractor, filed an ac-
tion in the Superior Court against the defendant (Keyes), an
architectural firm, for deceit, negligent misrepresentation, and
violation of G. L. c. 93A, based upon alleged misrepresentations
made by Keyes in the plans and specifications for the construc-
tion of an elementary school for the Blackstone-Millville
Regional School District in which Nota was the site subcontrac-
tor and Keyes the school's architect. Keyes filed a motion for
summary judgment on the grounds that (1) the claim of deceit
should be dismissed because Nota failed to plead the elements

of deceit with sufficient particularity or alternatively, that the alleged misrepresentations could not support an action for deceit; (2) the claim of negligent misrepresentation was barred because the plaintiff suffered purely economic damages which Keyes alleged were not recoverable in a negligence action; and (3) recovery under G. L. c. 93A was barred because Keyes acted as a contract administrator and its actions in that capacity were immune from liability. A Superior Court judge allowed the motion without any explanation of his reasons for doing so. Nota appeals, asserting that none of the grounds alleged by Keyes would have warranted the entry of summary judgment. We reverse.

1. *Deceit claim.* Under Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), circumstances constituting fraud must be stated with particularity. We believe the allegations of the complaint were sufficient to meet the requirements of the rule.

The complaint alleged that Keyes was hired by the school district to prepare plans and specifications for solicitation of bids for the construction of a new school; that Keyes in preparing the plans and specifications knowingly and intentionally misrepresented the location and depth of the ledge to be encountered in the septic system area, and the amount and location of subsurface ledge to be anticipated on the site work portion of the project, in particular by stating that the contractor should anticipate some 12,000 cubic yards of ledge when it had information in its possession which demonstrated the presence of at least 24,000 cubic yards of ledge; and that Keyes's failure to disclose subsurface information in its possession concerning the "North Parking Lot" also constituted a knowing and intentional misrepresentation. The complaint further alleged that Keyes should have known that Nota would rely on its representations in bidding on the project and that Nota did rely upon those representations resulting in financial losses as a direct result thereof. Based on those allegations, there is no question that Nota's allegations of deceit were stated with sufficient particularity, adequately warning Keyes of the circumstances giving rise to Nota's claim of deceit. See *Friedman* v. *Jablonski*, 371 Mass. 482, 488-489 (1976); *Schinkel* v. *Maxi-Holding, Inc.*, 30 Mass. App. Ct. 41, 48 (1991).

Keyes also claims that the representations made do not give rise to a cognizable cause of action. In order to support an action for deceit, Nota had to establish that Keyes made a misstatement of a material fact. *Kozdras* v. *Land/Vest Properties,*

*Inc.*, 382 Mass. 34, 40-43 (1980). *Zimmerman* v. *Kent*, 31 Mass. App. Ct. 72, 77 (1991). Deceit may also be perpetrated "by an implied as well as by an express representation." *Briggs* v. *Carol Cars, Inc.*, 407 Mass. 391, 396 (1990), quoting from *Robichaud* v. *Owens-Ill. Glass Co.*, 313 Mass. 583, 585 (1943). We address each of the representations on which Nota relies.

(a) *Quantity of ledge.* The only reference to the amount of the ledge to be encountered was contained in paragraph 3.1 B of the allowance section of Addendum No. 4, Section 01020 of the specifications, which reads as follows:

> "Allowance No. 2. Allow for the removal of 12,000 cubic yards of rock excavation. . . . The actual contract sum shall be adjusted at the completion of the project by the unit prices established for an Add/Deduct in the General Bid Form, Section 00300(M). For the purposes of this section, any deduct amount to the contract sum will be determined based on the open rock excavation unit costs in the General Bid Form. For the purposes of this section, any additions to the contract sum will be based on the open/trench excavation unit costs in the General Bid Form."

Nota argues that the statement is actionable as a "material fact" because an opinion expressed as an opinion which the declarant knows to be false is a misstatement of the declarant's state of mind. *Briggs* v. *Carol Cars, Inc.*, 407 Mass. at 396. See Nolan & Sartorio, Tort Law § 142 (2d ed. 1989); Restatement (Second) of Torts § 539 (1977). In addition, Nota argues that, in any event, a statement of opinion as to future events may be actionable where one possesses superior knowledge concerning the matter to which the misrepresentation relates. *Gopen* v. *American Supply Co.*, 10 Mass. App. Ct. 342, 345 (1980).

We reject Nota's arguments as to this statement in the addendum. While it is true that a statement in the form of an opinion may be actionable as a statement of material fact if the representation is false and the subject matter is one susceptible of actual knowledge, *Briggs* v. *Carol Cars, Inc.*, 407 Mass. at 396; *Zimmerman* v. *Kent*, 31 Mass. App. Ct. at 79, here the amount of subsurface ledge was a matter not susceptible of actual knowledge or one over which Keyes had control. Contrast *Gopen* v. *American Supply Co.*, 10 Mass. App. Ct. at 345 (false

representation of net worth of subsidiary corporation's assets by agent of parent corporation held matter susceptible of actual knowledge and one in which parent corporation would have had superior knowledge because of its control over subsidiary). In fact, the bid specifications and terms of the contract between the school district and contractor did not vouch for the accuracy of the amount of the allowance. Instead, they provided for additional compensation and equitable adjustment in the contract price in the event additional ledge was encountered. In those circumstances, we believe that Keyes's statement in the addendum providing for an allowance of 12,000 cubic yards of rock does not give rise to an actionable misstatement. Compare *D. Federico Co.* v. *Commonwealth*, 11 Mass. App. Ct. 248, 251-253 (1981) (where contract explicitly stated that accuracy of engineer's estimates was not guaranteed, contractor could not recover from owner for increased costs incurred because of the underestimation of the amount of excavation and replacement fill required); *J.F. White Contr. Co.* v. *Massachusetts Bay Transp. Authy.*, 40 Mass. App. Ct. 937, 938-939 (1996) (contractor could not recover overhead expenses associated with allowance items which were roughly six times the estimates provided in the bid documents, where contract explicitly excluded reimbursement for such overhead, and contract language clearly provided for compensation for amounts incurred in excess of the allowance items, thus clearly eliminating any possibility of an implied warranty that they were even approximately correct).

(b) *Septic system area.* While liability may not be predicated on the representation set forth in the allowance addendum, we are of opinion that this is not true with respect to Nota's assertion that Keyes knowingly and intentionally misstated the location and depth of the ledge in the septic system area. Certainly, this statement is one of fact susceptible of actual knowledge and one in which Keyes had superior knowledge based on the results of test borings in its possession showing the exact location and depth of the ledge. Compare *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, 406 (1888).

(c) *North parking lot.* Finally, we believe that whether Keyes's failure to disclose the ledge in the North parking lot may give rise to a cognizable cause of action presents a disputed factual issue. Although Keyes does not dispute that it withheld this information, it argues that it owed Nota no duty to disclose, and did not conceal or take affirmative steps to prevent Nota

from acquiring information about the ledge. While we agree that an action for deceit may not be predicated on a mere failure to disclose where there is no duty to disclose, *Swinton* v. *Whitinsville Sav. Bank,* 311 Mass. 677, 678 (1942), we recognize that a duty to disclose may arise in a number of circumstances. Restatement (Second) of Torts § 551 (1977). See *Greenery Rehabilitation Group, Inc.* v. *Antaramian,* 36 Mass. App. Ct. 73, 77-78 (1994). Section 551 provides in part:

> "(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

> "(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated . . .

>> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and . . .

>> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

Where Keyes knew or should have known that potential bidders on the project would indeed rely on the plans and specifications for preparation of their bids and, at least in the septic system area, disclosed information although it was inaccurate as to the presence of ledge, we cannot say that a jury could not find sufficient facts in those circumstances creating a duty to disclose this information to prospective bidders such as Nota. See Restatement (Second) of Torts § 551 comment m, at 126 (1977).

2. *Negligent misrepresentation.* In order to recover for negligent misrepresentation a plaintiff must prove that the defendant (1) in the course of his business, (2) supplies false

information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information. *Fox* v. *F & J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 587-588 (1996). See Restatement (Second) of Torts § 552 (1977). A claim for negligent misrepresentation is ordinarily one for a jury, unless the undisputed facts are so clear as to permit only one conclusion. *Fox* v. *F & J Gattozzi Corp.*, 41 Mass. App. Ct. at 588. Here there are a number of material facts in dispute such as the falsity of the information, the care exercised by Keyes in communicating the information, and most of all, whether Nota was justified in its reliance on the information communicated in light of both the contract and statutory provisions providing for compensation for extra work resulting from unknown or concealed subsurface conditions and delays not attributable to the contractor or subcontractor. See G. L. c. 30, § 39N.

Notwithstanding the presence of disputed facts, Keyes argues Nota's claim is barred because the economic loss doctrine, *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 107 (1989), prohibits Nota's recovery for its purely pecuniary losses. This argument is without merit. An exception to the doctrine permits recovery for economic losses resulting from negligent misrepresentation.[1] See *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497, 499-501 (1967).

Keyes also argues that design professionals such as architects

---

[1]We note that, according to Nota's representations at oral argument, it has already recovered at least part of its damages at an earlier stage of this litigation. In the event Nota recovers on the instant claim, it would be entitled to recover all of its pecuniary loss incurred as a result of an actionable misrepresentation. However, if Nota has recouped those same losses from others, those sums would be deducted because it cannot recover twice. *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1, 10 (1982). See Restatement (Second) of Torts § 552B (1977), which provides as follows:

" (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the

cannot be held liable for negligent misrepresentation because they are not in the business of supplying specific information to others to induce action. Keyes mistakenly relies upon *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497, in which an engineer was held not liable for errors in plans where he failed to show an area of peat and a hill through which a contractor had to cut, but was held liable for errors in placing stakes for a road. Keyes misreads *Craig*, where no liability for the mistakes in the plans was assessed against the engineer because he was under no contractual obligation to disclose soil conditions or to disclose contours with sufficient accuracy, not because he was a design professional. *Id.* at 499-500. In addition, the Supreme Judicial Court has held that liability will be imposed in Massachusetts for the negligent furnishing of services to one not a party to the contract where the defendant knows that the party will rely on his services. *Id.* at 501. Accord *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982). Accordingly, we see no reason why a design professional such as an architect should be exempt from liability for negligent misrepresentation to one where there is no privity of contract. This view is in accord with a number of other jurisdictions.[2]

Summary judgment should not have been allowed on the claim for negligent misrepresentation.

3. *Claim pursuant to G. L. c. 93A, §§ 2(a) and 11.* Where we hold that at least two of the representations made by Keyes in the plans and specifications set forth potentially viable claims for deceit and negligent misrepresentation, Nota's c. 93A claim based on those representations remains viable. *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 714 (1990). *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 234-235 (1985).

---

plaintiff's reliance upon the misrepresentation.

"(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant."

[2]Accord *Donnelly Constr. Co.* v. *Oberg/Hunt/Gilleland*, 139 Ariz. 184 (1984); *A.R. Moyer, Inc.* v. *Graham*, 285 So. 2d 397 (Fla. 1973); *Rozny* v. *Marnul*, 43 Ill. 2d 54, 62-68 (1969); *Jim's Excavating Serv., Inc.* v. *HKM Assocs.*, 265 Mont. 494, 501-506 (1994); *Davidson & Jones, Inc.* v. *County of New Hanover*, 41 N.C. App. 661 (1979). Contra *Fleischer* v. *Hellmuth, Obata & Kassabaum, Inc.*, 870 S.W.2d 832, 834-837 (Mo. Ct. App. 1993); *Floor Craft Floor Covering, Inc.* v. *Parma Community Gen. Hosp. Assn.*, 54 Ohio St. 3d 1 (1990); *Sensenbrenner* v. *Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419 (1988). See generally Annot., Tort Liability of Project Architect for Economic Damages Suffered by Contractor, 65 A.L.R. 3d 249 (1975).

In addition, Nota has alleged under this count that Keyes in its role as the administrator of the construction phase of the contract failed to act fairly and in good faith in resolving Nota's disputes under the construction contract relating to change orders and redesign of the project. Accordingly, Nota has placed in issue the good faith of the administrator. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474-476 (1991).

Keyes argues that it was entitled to quasi-judicial immunity in its role as contract administrator, but cites no case in support of this proposition. In *Comins* v. *Sharkansky*, 38 Mass. App. Ct. 37, 39 (1995), we observed that immunity may extend beyond judges to others who "are involved in an integral part of the judicial process" such as arbitrators. However, Keyes's functions were not integral to the judicial process because its contractual claim-resolution functions are distinct from the contract's arbitration terms, which provide for arbitration through the American Arbitration Association of disputes which the parties have not been able to satisfactorily resolve with the architect. Accordingly, this argument also fails.

*Judgment reversed.*