Gershengorn, J.
Defendants 1280 Massachusetts Avenue Limited Partnership, Niles Company, Inc. and John Niles bring this summaiy judgment motion on all counts of the plaintiffs complaint. The plaintiff is a Massachusetts corporation that leased a restaurant premises in Cambridge from the defendants in 1985. The plaintiff alleges that rent was overpaid for ten years because the area leased was 2446 square feet rather than the 2655 square feet listed in the lease and seeks relief under theories of breach of contract, mutual mistake, misrepresentation, and violation of G.L.c. 93A.
Defendants respond by stating that the lease contained a flat yearly rental amount which was not based on square footage and that a lease amendment signed in 1985 stated that there were no amounts due under the original lease. In addition, John Niles has filed a separate motion for summaiy judgment based upon his residence in Maiyland and lack of involvement in the lease negotiation. For the reasons set forth below, the defendants’ motion for summaiy judgment is ALLOWED on all counts of the complaint.
BACKGROUND
On March 15, 1985, the plaintiff entered into a commercial lease agreement to rent restaurant space located at 1280 Massachusetts Avenue in Cambridge from 1280 Massachusetts Avenue Limited Partnership. During the lease negotiations, the building was still under construction. A ten year lease was signed under seal and provided for a yearly fixed rent of $79,644.00. The lease also stated that the premises consisted of 2,655 square feet of net rentable floor area. The plaintiff operated its restaurant throughout the lease term. John Niles, president of Niles Associates, Inc., was the building manager who acted on behalf of the defendant landlord until Niles’s retirement in July 1986. Thomas H. Niles took over management of the building thereafter. Niles Associates was the entity which acted as the general partner for the landlord, 1280 Massachusetts Avenue Limited Partnership.
In 1995, the plaintiff engaged the services of architect T. Anthony Butler and discovered that the actual square footage of the area leased was 2,446 square feet. This number is 209 square feet less than the 2,655 square feet listed in the lease. There is no dispute that the actual square footage leased was 2,446. Also in 1995, the plaintiff, through its principals, Charles and John Chaprales, sought to extend the lease another five years to realize a greater profit on the sale of their restaurant business. During these negotiations, Thomas H. Niles learned that the plaintiff was willing to forego any claim of a rent refund due in exchange for the negotiation of a lease extension. The parties did not, however, reach an agreement regarding a lease extension.
Thereafter, the plaintiff sold its business and assigned the existing lease to Grafton Street, Inc. On July 29, 1996, the plaintiff and defendant landlord executed a “First Amendment to Lease.” The First Amendment to Lease contained the following clause under “Warranties and Representations”:
Each of LANDLORD and ASSIGNOR represent and warrant to each other and to ASSIGNEE that to the best of their knowledge there are no defaults under the Lease, that the Lease is in full force and effect as affected by this Agreement and that there are no amount or credits presently due or owing under the Lease from ASSIGNOR to LANDLORD or vice-versa, except for Yearly Fixed Rent to be paid in conjunction with the execution of this Agreement and such of the Tenant’s share of real estate taxes and operating expenses not yet due and payable.
The plaintiff transferred its rights under the March 31, 1985 lease to assignee Grafton Street, Inc. under Article IIIA of the lease which reads: “Effective as of the date hereof, ASSIGNOR hereby assigns all of its right, title and interest in, to and under the Lease to ASSIGNEE.” Thereafter, the plaintiff commenced this action against the defendants in 1997 seeking relief for the error in the total square footage of rental space under the lease.
DISCUSSION
A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c). The defendants, as the moving parties, bear the burden of establishing there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law on every relevant claim. *380 Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The evidence presented should be considered in a light most favorable to the plaintiffs as the party opposing this motion for summary judgment. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Summary judgment should be denied where there is a dispute as to a material fact.
I.The Lease
Two sophisticated parties negotiated a commercial lease for the Cambridge restaurant property during late 1984 and early 1985. According to Charles Chaprales, during the negotiations the parties discussed the rent in terms of an amount per square foot. The lease was a document signed under seal subject to a twenty year statute of limitations. The lease agreement stated a fixed yearly amount of rent. Although the net rentable floor area to be leased was later described in the lease in terms of square feet, the lease contains no expression of rent based upon the number of square feet. The lease is clear and unambiguous in stating a flat figure as an annual amount of rent.
II.Breach of Contract
The plaintiff alleges that it was charged excessive rent from the onset of its occupation of the premises. In essence, the plaintiffs breach of contract claim is twofold. First, it alleges that the rental price under the lease was based upon the number of square feet. Since the plaintiff later discovered that the total square feet was actually 2,446 rather than 2,655, it argues that the defendants charged it too much rent for the space. Nowhere in the lease does it state, however, that the rental amount is based upon a price per square foot. Indeed, the lease lists the annual fixed rental fee of $79,644.00.
As a matter of law there is no material breach of contract. “An omission to specify an agreement in a written lease is evidence that there is no such understanding.” Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964). See Worcester-Tatnuck Square CVS, Inc. v. Kaplan, 33 Mass.App.Ct. 499 (1992). Under the parol evidence rule, a court may not hear evidence of the intention of the parties which directly contradicts the agreed upon terms of the written lease. See Robert Industries, Inc. v. Spence, 362 Mass. 751 (1973); Kidder v. Greenman, 283 Mass. 601 (1933). Ordinary rules of contract construction dictate that the essential terms of this lease agreement were established despite the discrepancy in the actual square footage.
Second, the plaintiffs breach of contract argument also rests upon the allegation that the defendants breached the lease agreement by providing only 2,446 square feet rather than 2,655.
At the time the lease was drawn, the building in question was undergoing construction. A good faith error occurred in the measurement of the square footage of the area to be leased. The difference between the square footage listed in the lease and the actual area available was a matter of 209 square feet. A careful reading of the lease reveals that despite the inaccuracy, under the written terms of the lease the parties agreed to accept the incorrect square footage. Article I of the lease pertains to parties and premises. It reads: “For all purposes of this lease said Premises shall be deemed to contain the Premises Net Rentable Floor Area . . .” (Emphasis added.)
In any event, the parties signed an agreement which assigned the plaintiffs rights and obligations under the lease to a third party on July 29, 1996 in a document entitled “First Amendment to the Lease.” By virtue of the assignment, the new tenant stands in the shoes of the plaintiff, and the plaintiff has no standing to bring this breach of contract claim. Furthermore, in the First Amendment to the Lease, the plaintiff agreed that no further rents were due the landlord. The document was signed after the plaintiff knew of the discrepancy in the space leased.
Even if the plaintiff had standing and was not bound under the First Amendment of the lease, the plaintiff is barred from bringing its breach of contract claim by the statute of limitations. The plaintiff alleges that the discovery rule protects it from a statute of limitations bar. The discovery rule, however, does not apply to the case at hand. The statute of limitations will be tolled if the new information was an “inherently unknowable” wrong. Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99, 106 (1980). Here, the plaintiff either knew or should have known of the discrepancy in space. Accordingly, summary judgment must be granted as to count I of the complaint.
III.Mistake of Fact
Under count II of the complaint, the plaintiff sets forth a mistake of fact claim seeking the remedy of reformation. In order to establish a claim for reformation, a plaintiff must show: 1) a mistake as to a “basic assumption” of the contract, 2) having a “material affect on the agreed exchange of performances,” and 3) the party seeking reformation does not bear the “risk of the mistake.” Restatement (Second) of Contracts §152 (1979). Under the circumstances of this case, an equitable remedy is not available based upon mistake of fact. Where the plaintiff has sold its rights under the lease, reformation is inappropriate. The plaintiff “cannot ask a court of equity, under the guise of a bill to reform an instrument, to discover and establish the terms of a contract which they are unable to perform.” Riss v. Imper Realty Corp., 355 Mass. 782, 793 (1969).
Both parties agree that an error was made, however, there is no connection between the error and its material affect on the agreed exchange of performances. Under the terms of the lease, rent was not based on square footage. All the material terms pertaining to rent were specified in the lease where it listed an annual amount. “The boundaries of the leased space having been fixed, it was not fatal to the *381 validity of the agreement that its floor area was not calculated in advance.” Bridge Enterprises, Inc. v. Futurity Thread Co., 2 Mass.App.Ct. 243, 248 (1974). The incorrect square footage was not material to the contract as the restaurant operated at this location for more than ten years.
In addition, the plaintiff bore the risk of mistake. It possessed the ability to confirm or deny the true square footage available. Under the theory of laches, the plaintiff may not now come forward after twelve years of silence seeking reformation. See Markell v. Sidney D. Pfeifer Foundation, Inc., 9 Mass.App.Ct. 412, 440 (1980). The plaintiff is bound by the terms of the agreement. Summary judgment for the defendants on count II is, therefore, appropriate.
IV. Misrepresentation
A tort claim based on misrepresentation is time-barred. At all times after the plaintiff occupied the premises, it possessed the ability to have discovered the deviation in amount of space between that listed with the lease agreement and the actual space available. See Friedman v. Jablonski, 371 Mass. 482 (1976). Under G.L.c. 260, §2A, actions sounding in tort are subject to a three year statute of limitations. The plaintiff argues that it has alleged fraud in its memorandum of law in support of this motion for summary judgment. However, fraud must be alleged with particularity under Mass.R.Civ.P. 9(a). See Nota Construction Corp. v. Keyes Associates, Inc., 45 Mass.App.Ct. 15 (1998). The complaint in this matter does not allege fraud with particularity. Therefore, the applicable statute of limitations for a tort will not be tolled by virtue of any allegations of fraud. As a result, summary judgment as to count III is allowed.
V. Chapter 93A
The claim under G.L.c. 93A is time-barred. Under G.L.c. 260, §5A there is a four year statute of limitations for violation of G.L.c. 93A. The time period within which the plaintiff could have brought a claim for unfair and deceptive business practices has long since passed. In the event of deceit or fraudulent concealment, the statute of limitations would be tolled. “Equitable tolling of statute of limitations is used only sparingly and is generally limited to specified exceptions.” Shafnacker v. Raymond James and Associates, 425 Mass. 724, 728 (1997), citing Irwin v. Dept. of Veteran’s Affairs, 498 U.S. 89 (1990) (equitable tolling available only where the defendant affirmatively misleads the plaintiff). The pariy attempting to claim that there were certain facts that were unknown at the time of the contract must not have had access to that knowledge. “The inherently unknowable wrong must be incapable of detection by the wronged party through the exercise of reasonable diligence.” Melrose Housing Authority v. New Hampshire Ins. Co., 402 Mass. 27 (1988). Since the plaintiff took possession of the premises in 1985, it reasonably should have discovered any potential cause of action long before 1997 because the defect was not an inherently unknowable wrong. Summary judgment is, therefore, allowed as to Count IV.[2]
ORDER
It is therefore ORDERED that defendants’ motion for summary judgment be ALLOWED.

Defendant John Niles individually brings a separate motion for summary judgment because he is not a proper party to the lease. We need not reach the personal jurisdiction issue, as Niles is not individually liable on the lease. See Elm Farm Foods Co. v. Cijrino, 328 Mass. 549, 557 (1952).